IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| ALEXANDER DYLAN GREEN, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 3:05-cv-215 |
| ) | 3:05-cv-268 |
| TIMOTHY HUTCHISON, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

This civil action is before the court on the motion of defendant Knox County for summary judgment [doc. 70]. The plaintiff has responded [doc. 76], and Knox County has filed a reply brief [doc. 82]. The court finds that oral argument is not necessary and the motion is ripe for the court's consideration. For the reasons discussed below, Knox County's motion will be denied.

Before addressing Knox County's motion, however, the court will take this opportunity to address the facts and claims in this case. The complaints in these consolidated cases, as will be described in some detail below, are muddled collections of federal and state claims. Further, prior motions and

responses filed in this case were less than forthcoming.[1]  Thus, it appears that some clarification will be needed before this case is tried before a jury.

## I.  FACTUAL BACKGROUND

The following facts are taken from the exhibits filed with Knox County's motion for summary judgment and plaintiff's response.[2]  On April 23, 2004, the plaintiff, Alexander Green, was arrested on four charges: vandalism, resisting arrest, and two assault charges [JMR 138].  When he arrived at the Knox County Sheriff's Office Corrections Division, the initial screening form indicated that his "Initial Recommended Housing" was **MEDICAL** [JMR 119] (emphasis in original).   It is not clear whether the plaintiff was housed in Medical from the beginning of his incarceration or not, but the records show that he was located in Medical on April 26, 2004 [JMR 97].[3]  At that time, the plaintiff was delusional and exhibiting uncontrollable behavior.  For the next few days, the records show that the plaintiff was, for example, not sleeping or eating, mumbling and babbling to himself, walking in circles, and spitting [JMR 93-97].

---

[1] For example, defendant Sheriff Timothy Hutchison filed two motions for summary judgment without informing the court whether the plaintiff was arrested pursuant to a warrant or detained without probable cause.  After summary judgment was denied, his appeal to the Sixth Circuit was summarily dismissed.  *See* Doc. 58 (Informational copy of Order).

[2] The plaintiff's jail medical file was filed under seal as an exhibit to doc. 87.  The court will refer to pages in this record as JMR and the Bates stamp number.

[3] The notes indicating that he was being monitored begin on April 26, which leads to an inference that he was not in Medical from the date of his arrest, April 23.

Six days after his arrest, on April 29, 2004, two orders were signed by a Knox County General Sessions judge ordering the plaintiff to be evaluated by Helen Ross McNabb Forensic Service Program and Lakeshore Mental Health Hospital [JMR 127 and 134]. On April 30, 2004, he was seen by the Peninsula Mobile Crisis Unit [JMR 120-126]. At that time, it was noted that the plaintiff had been "decompensating" since his arrest. He was "continually talking jibberish," and was loud, threatening, and aggressive. On a checklist prepared at that time, his appearance was disheveled and bizarre, he was disoriented, he was uncooperative and agitated (banging his head on the door), he was delusional, his judgment was severely impaired, his speech was rambling, and his memory was impaired.

On April 28, 2004, Dr. Russell Frazier, Medical Director for the Knox County Sheriff's Office, prescribed 150 mg. of Haldol [JMR 114]. The notes say that the dosage may be increased to 300 mg. if needed and repeated in twenty-four hours if needed for violent behavior. Dr. Frazier administered the first dose. On April 30, 2004, another 200 mg. of Haldol was administered [JMR 94]. The plaintiff was "held down for injection to r[ight] hip." On May 1, 2004, it was noted that "it doesn't seem like the Haldol is holding the [inmate]" [JMR 90]. He was given a total of 650 mg of Haldol within two or three days.

On May 2, 2004, the plaintiff was transferred to the University of Tennessee Memorial Hospital and admitted to the intensive care unit due to an

3

overdose of Haldol [JMR 108-113].[4] While hospitalized, the plaintiff was restrained and guarded by a reserve officer, in part because he was still exhibiting violent behavior [JMR 107]. On May 10, 2004, the plaintiff was moved to Peninsula Hospital where he stayed until May 17th when he was returned to the Knox County jail [JMR 133]. On May 18, 2004, almost four weeks after he was arrested, the defendant had his first appearance before a judge who set a bond, and he was released from custody [JMR 131-132].

The Medical Protocol for the Knox County Sheriff's Office Medical Division was attached to Knox County's motion for summary judgment [doc. 70]. In pertinent part, the Protocol provides:

> K. Mental Health Services
>    1. Mental health services include at a minimum:
>
> a. Screening for mental health problems upon intake, as approved by the mental health professional
>
> b. Referral to outpatient services for the detection, diagnosis, and treatment of mental illness
>
> c. Crisis intervention and the management of acute psychiatric episodes
>
> d. Stabilization of the mentally ill and the prevention of psychiatric deterioration in the correctional setting

---

[4] Interestingly, neither defendant Knox County's statement of "Undisputed Material Facts" nor the affidavit of Ms. Pinkston, Health Administrator for the Knox County Detention Facility, even mention the plaintiff's overdose.

e. Referral and admission to licensed mental health facilities for inmates who's [*sic*] psychiatric needs exceed the treatment capability of the facility

2. All activities provided by the appropriate mental health authority will be provided by mental health service personnel.

. . . .

7. If the inmate is combative and uncooperative they will be housed in the therapeutic isolation room and Mobile Crisis will be called to evaluate the inmate.

8. If the inmate is out of control and medical is concerned for the inmate's safety or the safety of staff personnel, Mobile Crisis will evaluate the inmate for emergency placement in Lakeshore or remain in isolation with observation and follow-up with the appropriate mental health authority within the next 24-hours.

9. The Medical staff, by authority of the Medical Director, will not administer involuntary psychotropic medication under any circumstances.

. . . .

In her affidavit, Dorothy Pinkston, the Health Administrator for the Knox County Detention Facility [doc.87], states that, "At all times that the Plaintiff was housed at the Knox County Detention Facility, the corrections Officers and medical staff complied with the Medical Protocol for the Knox County Sheriff's Office Medical Division." In response, the plaintiffs have provided the court with the affidavit of Paul Kaufman, M.D., J.D., who reviewed the plaintiff's medical records [doc. 76, exh. 1]. Dr. Kaufman concludes that the order to administer the Haldol was "reckless, totally inappropriate, and dangerous" because the slow-acting form of Haldol, Haldol-D, was administered instead of regular Haldol. He

5

states: "the long acting form of Haldol is never indicated until a person demonstrates a tolerance of the effects of [regular] Haldol at lower short acting doses." Dr. Kaufman further believes that it was "cruel" to subject the plaintiff to a prolonged period of side effects as a result of the overdose of long-acting Haldol. Finally, Dr. Kaufman states:

> If this order was made pursuant to a protocol, the policy is ineffective and certain to lead to an overdose . . . . Such a policy is reckless. It deprives a patient of appropriate and necessary medical care and can be expected to result in overdose as happened to Mr. Green. In my opinion, no competent physician would recommend or endorse such an inappropriate and dangerous protocol.

## II. LEGAL DISCUSSION

A. Plaintiffs' Claims Against Defendant Knox County

In their complaint, the plaintiffs make the following claims against defendants Knox County, Knox County Sheriff's Department and Sheriff Hutchison in his official capacity for which they seek compensatory damages, costs and attorney fees:[5]

**Count One** – Violations of the plaintiffs' eighth and fourteenth amendment constitutional rights based on Knox County's custom or policy that resulted in deliberate indifference to Mr. Green's serious medical condition

**Count Two** – Knox County's liability for the actions of its employees and officers

---

[5] Timothy Hutchison is no longer the Sheriff of Knox County, having been replaced by J.J. Jones.

**Count Three** – Violations of the plaintiffs' due process rights based on the Knox County's failure to timely deliver the defendant to a judicial officer thus denying him his right to bail and other rights of arrested persons

**Count Six** – State law claim for medical malpractice brought pursuant to Tenn. Code Ann. § 8-8-302 (allowing persons to bring suit against a county for any wrong, injury, loss or damage resulting from an act of a deputy acting under color of office)

**Count Seven** – Unspecified claims against Knox County brought pursuant to Tenn. Code Ann. § 8-8-302

**Count Eight** – Claim against Knox County brought pursuant to Tenn. Code Ann. § 8-8-302 and the Governmental Tort Liability Act for denying Mr. Green access to his minister

**Count Nine** – Claim against Knox County under the Tennessee Governmental Tort Liability Act

**Count Thirteen** – Claim against Knox County for failure to provide adequate medical care

**Count Thirteen [*sic*]** – Claim against Knox County for failure to pay for Mr. Green's medical care while a patient at the University of Tennessee Medical Center and Peninsula Hospital

The remaining claims have been dismissed, apply to Sheriff Hutchison in his individual capacity, or do not exist at all (*e.g.*, there are no claims four and five).

The court will first consider the plaintiffs' § 1983 claims; the remainder of the plaintiffs' claims are state law claims for which the court has supplemental jurisdiction. Counts One and Three arguably state claims for violations of Mr. Green's constitutional rights; that is, that Knox County had a custom and practice that resulted in a deliberate indifference to serious medical

7

needs and a denial of due process rights.[6] As discussed below, the § 1983 claims survive summary judgment, so any remaining state law claims will be tried with the federal claims. 28 U.S.C. § 1367.

B. Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, a motion for summary judgment may be granted, "if the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." As the Supreme Court stated in *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), this "plain language mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Thus, the moving party's burden may be discharged by showing that there is an absence of evidence to support the non-moving party's case. *Id.* at 325, 106 S.Ct. at 2554. In order for a non-moving party to defeat a motion for summary judgment, the non-moving party must come forward with persuasive evidence to support his or her claim or demonstrate that there is a genuine material factual dispute; that is, the non-moving party must

---

[6] As explained below, the only count upon which Mr. Green's parents, who are also named as plaintiffs in this lawsuit, might prevail is Count Thirteen [*sic*]. The remaining counts apply only to plaintiff Alexander Dylan Green who will be referred to as the "plaintiff."

8

produce evidence on which the jury could reasonably find for the non-moving party.

### C. Plaintiff's Claim for Deliberate Indifference to Serious Medical Needs

In its motion for summary judgment, Knox County argues that the plaintiffs have not provided any evidence of deliberate indifference to the plaintiff's serious medical needs. Actually, the real issue is whether, as alleged by the plaintiff, Knox County had a custom and practice that resulted in deliberate indifference to the plaintiff's serious medical needs.

Knox County is only liable under § 1983 for the constitutional violations it causes. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). "*Respondeat superior* or vicarious liability will not attach under § 1983." *Id.* "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under 1983." *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694, (1978).

As noted above, Knox County's position is that at all times it complied with its medical protocol for handling prisoners like the plaintiff. In contrast, Dr. Kaufman opines that if the treatment of the plaintiff was according to protocol, then the protocol is "reckless" and "deprives a patient of appropriate and

necessary medical care." Thus, there is a genuine issue of fact as to whether Knox County's policy resulted in a deliberate indifference to the serious medical needs of the plaintiff and summary judgment is inappropriate on this issue.

        D.  <u>Plaintiff's Due Process Claim</u>

Knox County seeks summary judgment on the plaintiff's claim that Knox County denied him his due process and equal protection rights. Knox County's brief correctly sets out the law for county liability under § 1983, but the totality of its argument is:

> Plaintiff cannot identify a facially unlawful policy. Where Plaintiff cannot identify a facially unlawful policy, Plaintiff must demonstrate that the action was taken with deliberate indifference as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice. Plaintiffs cannot satisfy the above requirements or surmount the causation burden.

The plaintiff does not respond to the argument at all.

Unfortunately, the plaintiff's failure to respond to Knox County's meager argument results in summary judgment for the county on this issue. *See, e.g.*, *Dage v. Time Warner Cable*, 395 F. Supp. 2d 668, 669 (S.D. Ohio 2005) (plaintiff has abandoned his claim by failing to address it in his responsive pleading); *Kattar v. Three Rivers Area Hosp. Auth.*, 52 F. Supp. 2d 789, 798 n.7 (W.D. Mich. 1999). In this case, the plaintiff was not taken before a magistrate for almost four weeks, although six days after his arrest a General Sessions Judge signed two orders arranging for the plaintiff to be evaluated by Helen Ross

10

McNabb Forensic Service Program and Lakeshore Mental Health Hospital. Nonetheless, the plaintiff has not come forward with any evidence that would support his claim that Knox County has a custom or policy that causes mentally ill arrestees to be denied their right to be taken before a judge within a reasonable time after their arrest. *See Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005) (stating that in order to hold a governmental entity liable, the plaintiff must (1) identify the policy or custom; (2) connect the policy to the governmental entity; and (3) show that his particular injury was incurred to the execution of that policy). The court finds that the plaintiff has abandoned this claim against Knox County.

E.  <u>Plaintiff's Remaining Claims Against Knox County</u>

**Count Two**

This count does not appear to actually state a claim. Rather, the plaintiff alleges that Knox County is liable for the actions of its decision-making officials and, under Tenn. Code Ann. § 8-8-302, for the actions of sheriff's deputies. In *Jenkins v. Loudon County*, 736 S.W.2d 603, 608-09 (Tenn. 1987), the Tennessee Supreme Court held that "[a]ctions for the non-negligent misconduct of deputies do not 'aris[e] pursuant to' the GTLA [Governmental Tort Liability Act], and may therefore be covered by T.C.A. §§ 8-8-301, *et seq.*, in the appropriate cases."). *Jenkins* was later partially abrogated by *Limbaugh v. Coffee Medical Center*, 59 S.W.3d 73 (Tenn. 2001). The Tennessee Supreme Court found that the list of exceptions to the removal of immunity found in section

29-20-205 of the Tennessee Code Annotated is not to be expanded to include all intentional torts. *Id.* at 83. Thus, § 8-8-302 would allow a plaintiff to bring any cause of action against a deputy that is not specifically listed in § 29-20-205. The plaintiff would still have to meet the requirements of § 8-8-302.

**Count Six**

This claim is a state law claim for medical malpractice brought pursuant to the Governmental Tort Liability Act (Tenn. Code Ann. §§ 29-20-101 *et seq.*) and Tenn. Code Ann. § 8-8-302. Defendant Knox County has not moved for summary judgment on this claim, so it remains an issue for trial.

**Count Seven**

This count does not appear to state a claim, but merely alleges that Knox County is liable for the plaintiff's damages under Tenn. Code Ann. § 8-8-302.

**Count Eight**

Defendant Knox County argues that this count of the complaint fails to state a claim upon which the plaintiff will be able to prevail and provides an explanation for denying him access to a minister while he was in jail. The plaintiff has not responded to Knox County's argument nor provided any basis for an entitlement to access to a minister while in jail. The court finds that the plaintiff has abandoned this claim. *See, e.g.*, *Dage v. Time Warner Cable*, 395 F. Supp. 2d 668, 669 (S.D. Ohio 2005) (plaintiff has abandoned his claim by failing to

address it in his responsive pleading); *Kattar v. Three Rivers Area Hosp. Auth.*, 52 F. Supp. 2d 789, 798 n.7 (W.D. Mich. 1999).

**Count Nine**

Knox County argues that the claim is so vague that it must speculate as to the specific nature of the claims against it. The plaintiff responds that his claims of negligence found in paragraphs 22, 25, 26, and 40 are not vague. The plaintiff alleges that he was given an overdose of drugs administered to him by Knox County employees. The court agrees that the plaintiff has arguably stated a claim for negligence under the Tennessee Governmental Tort Liability Act and the evidence produced by Knox County demonstrates that the overdose occurred. Knox County's motion for summary judgment on this issue must be denied.

**Counts Thirteen and Thirteen [*sic*]**

Knox County has not moved for summary judgment on these claims, so these issues remain for trial  The court notes that allegations in Count Thirteen are repetitive of the allegations in Count One and Count Nine. Further, the allegations of Count Thirteen [*sic*], related to the failure of Knox County to pay the plaintiff's medical bills, appear to be the only claims upon which plaintiffs Richard Earl Green, Sr. and Wanda Diane Green may recover any damages.

## III. CONCLUSION

For the reasons discussed above, Knox County's motion for summary judgment will be denied in part and granted in part: summary judgment on Counts One, Six, Nine, Thirteen and Thirteen [*sic*] is denied and granted as to all the remaining counts of the complaint. An order reflecting this opinion and setting this case for trial will be entered.

ENTER:

      *s/ Leon Jordan*    
United States District Judge